UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOLORES BUSTAMANTE ROMERO,

                Petitioner,                  DECISION AND ORDER

-vs-

                                      26-CV-00803-MAV

JAMES BAUSCH, Buffalo Field Office
Director, Immigration and Customs
Enforcement, et al.,

                Respondents.

_____

## INTRODUCTION

Petitioner Dolores Bustamante Romero, a citizen of Mexico, entered the United States without inspection in 2003. She was ordered removed by an immigration judge in 2018, and her administrative and judicial appeals were denied in May 2020 and May 2023, respectively. Petitioner remained released on conditions both during her removal proceedings and after her removal order became final. The government did not re-detain Petitioner during the removal period under 8 U.S.C. § 1231 or issue her an order of supervision after the removal period terminated. Petitioner resided at liberty in the country until April 22, 2026, when she was re-detained by U.S. Immigration and Customs Enforcement ("ICE") at a routine immigration check-in appointment.

Petitioner commenced this habeas corpus proceeding, pursuant to 28 U.S.C. § 2241, alleging, *inter alia*, that ICE violated her procedural due process rights when it revoked her supervised release on April 22, 2026, without notice or an opportunity

1

to be heard. ECF No. 1; *see* ECF No. 23 (amended petition). Following an evidentiary hearing, the Court issued a text order granting Petitioner's application for habeas relief and directed Respondents to release Petitioner from ICE custody. ECF No. 40.[1] The present decision and order memorializes the Court's reasoning.

## BACKGROUND

### I. Factual Background

Petitioner has lived in the United States for 23 years. ECF No. 23 ¶ 1. She entered in 2003 after fleeing gender-based violence in her home country of Mexico. *Id.* ¶ 18. Following years of working as a farm laborer in upstate New York, Petitioner began advocating publicly for the rights of farm workers and immigrants, speaking at universities and with local government officials. *Id.* ¶¶ 20–22, 30–31. Petitioner has never been arrested or charged with a crime. *Id.* ¶ 24. She has two adult daughters living in the country and four U.S. born grandchildren. *Id.* § 23.

Petitioner first encountered immigration officials in October 2014, when New York State Police called United States Border Patrol following a traffic stop, allegedly to help translate. *Id.* ¶ 25. After a brief detention, immigration officers issued Petitioner a Notice to Appear, charging her as inadmissible for having entered the country without inspection. *Id.* Petitioner was released from immigration custody on her own recognizance. *Id.* She remained out of custody for the duration of her removal proceedings.

On May 8, 2018, an immigration judge denied Petitioner's applications for asylum, withholding removal, and protection under the Convention Against Torture

---

[1] In accordance with the Court's text order, Petitioner was released from ICE custody on May 27, 2026, at approximately 7:00 p.m. ECF No. 41.

and ordered her removal to Mexico. *Id.* ¶ 27. Petitioner's appeals to the Board of Immigration Appeals ("BIA") and the Second Circuit were denied on May 13, 2020, and May 5, 2023, respectively. *Id.* ¶ 28. Instead of being re-detained following the exhaustion of her administrative appeal, Petitioner remained out of custody and subject to an alternatives-to-detention program that combined telephonic and in-person reporting. *Id.* ¶ 34; ECF No. 34–1 ¶ 18. Consistent with her release conditions, Petitioner reported to the U.S. Immigration and Customs ("ICE") Buffalo Field Office for check-ins on four occasions between September 2023 and June 2025. ECF No. 23 ¶ 35. She was not detained at any of those appointments.

In April 2026, Petitioner received a text message that instructed her to appear at the ICE Buffalo Field Office on April 22, 2026. *Id.* ¶ 37. The text message did not provide any indication that this appointment would be different from her previous appointments nor did it state that she would be detained during it. *See* ECF No. 36-1 (copy of translated text message). Petitioner appeared as scheduled and entered the Field Office as a group of friends and family members gathered. ECF No. 23 ¶ 38; No. 23-2 at 3. Upon her entrance into the facility, Petitioner was transported to a room where she provided a sworn statement regarding her identity and immigration record. *See* ECF No. 34-2 at 49–53 ("Record of Sworn Statement in an Administrative Proceeding," dated April 22, 2026). An officer allegedly remarked, "Oh, you're famous." ECF No. 23 ¶ 38. At some point, ICE made the decision to detain her for purposes of removal but did not provide her with any notice — written or otherwise — regarding the reasons for the revocation of her release. *Id.* ¶¶ 38, 39. Following her arrest, ICE transported Petitioner to Ohio then to Louisiana in preparation for her removal to Mexico. *Id.* ¶ 38.

## II. Procedural History

Petitioner filed a petition for a writ of habeas corpus on April 22, 2026, before her transfer out of the District, alleging that she was being unlawfully detained and was entitled to immediate release. ECF No. 1. Petitioner also moved for a temporary restraining order, seeking, among other things, an order directing that Respondents return her to a detention facility in this District. ECF No. 2. The Court held a hearing on the motion and ordered Petitioner's return so that she and her attorneys could prepare for an evidentiary hearing, which, at the time, was forthcoming. ECF Nos. 15–16. Petitioner subsequently filed an amended petition, adding a First Amendment claim that ICE detained her in retaliation for her purported fame and for "her past advocacy in support of labor rights and migrants' rights." ECF No. 23 ¶¶ 67-68. The government moved to dismiss, ECF No. 34, and Petitioner filed an opposition, ECF No. 36.

The Court held an evidentiary hearing on May 26, 2026, during which Petitioner testified through an interpreter and the parties stipulated to the testimony of another witness being read into the record. The Court received the following exhibits into evidence: a sample written notice of a revocation of release (Exhibit 1), a sample statement of interviewing officer regarding informal interview of detainee (Exhibit 2), and a copy of Petitioner's sworn statement from April 22, 2026 (Exhibit 3). Respondents did not call any witnesses or enter any evidence into the record. Without any objection from Respondents, Exhibits 1 and 2 were entered into evidence as documents that are typically issued when ICE revokes release. In fact, Respondents concurred that the written notice of revocation of release (Exhibit 1) is typically issued when ICE revokes release and agreed with Petitioner that such notice was not issued to her.

Shortly after the evidentiary hearing, the Court issued a text order denying the motion to dismiss and granting the amended petition to the extent that Petitioner was entitled to release from ICE custody. ECF No. 40.

## LEGAL STANDARD

28 U.S.C. § 2241(c)(3) authorizes federal courts to grant habeas relief to prisoners or detainees who are "in custody in violation of the Constitution or laws or treaties of the United States." Federal courts retain jurisdiction under § 2241 to review purely legal statutory and constitutional claims regarding the government's detention authority, but jurisdiction does not extend to "discretionary judgment," "action," or "decision" by the Attorney General with respect to either detention or removal. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (citing, *inter alia*, *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

A motion to dismiss in the habeas context is reviewed under the same standard as a motion to dismiss in a civil complaint. *Da Cunha v. Freden*, No. 25-CV-6532-MAV, 2025 WL 3280575, at *1 (W.D.N.Y. Nov. 25, 2025). To survive a motion to dismiss under Rule 12(b)(6), the petition "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss, even in a habeas context, a court "'may consider all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken.'" *Tripathy v. Schneider*, 473 F. Supp. 3d 220, 226 (W.D.N.Y. 2020) (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)).

## DISCUSSION

In the amended petition, Petitioner contends that her detention violates her

First Amendment right to freedom of speech, her procedural and substantive due process rights, the Administrative Procedures Act, and the *Accardi* doctrine, which holds that agencies must follow their own procedures, rules, and instructions. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). In response, Respondents argue that the Court lacks jurisdiction to entertain the amended petition under 8 U.S.C. §§ 1252(g), 1252(b)(9) and, even if it had jurisdiction, the amended petition should be dismissed because Petitioner is being lawfully detained in order to execute a final order of removal pursuant to 8 U.S.C. § 1231.

As an initial matter, with regard to jurisdiction, the Court previously considered and rejected Respondents' arguments in the context of an unlawful detention during removal proceedings. *De La Cruz v. Rhoney*, No. 25-CV-6699-MAV, 2026 WL 891658, at *3–*5 (W.D.N.Y. Apr. 1, 2026) (explaining that jurisdiction was not barred because the petitioner was not challenging the merits of his removability or the government's decision to commence removal proceedings). The Court's reasoning in *De La Cruz* applies equally to the amended petition here. Petitioner is not challenging the discretion of the government to execute a final order of removal nor is she challenging the legality of her removal order. Instead, Petitioner is challenging the manner in which ICE executed the removal order, which the Court may consider. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025) (collecting cases for the proposition that "challenges to ICE's discretion to execute a removal order" are barred but "challenges to the manner in which ICE executes the

removal order" are not barred). [2]

With respect to the merits, the Court holds that Respondents failed to adhere to the regulations implementing § 1231, specifically the procedural safeguards of 8 C.F.R. § 241.4(l), and must immediately release Petitioner. As such, the Court declines to address Petitioner's other claims.

## I. Relevant Legal Framework under § 1231

The Immigration and Nationality Act ("INA") authorizes the detention of noncitizens before and after they are ordered removed from the United States. *See* 8 U.S.C. §§ 1226(a), 1231(a)(2)(A). Once a person is ordered removed and the removal order becomes administratively final, the detention authority shifts to § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 533–34 (2021). Here, there is no dispute that Petitioner is subject to a final order of removal and, accordingly, that § 1231 governs her removal and detention.

Section 1231 requires the Government to remove a noncitizen from the United States "within a period of 90 days" (i.e., the "removal period") after, as relevant here, the order of removal becomes administratively final. 8 U.S.C. § 1231(a)(1)(A). During the removal period, the government "shall detain the alien." *Id.* § 1231(a)(2)(A). In other words, detention of a noncitizen during the removal period is mandatory. *See*

---

[2] Relating to the Court's jurisdiction, Respondents inaccurately characterize the Court's order enjoining Petitioner's transfer out of the country as a "stay of removal[.]" ECF No. 34-3 at 11. The Court did not issue a stay of removal in this case nor could it. *See Al-Garidi v. Holder*, No. 09-CV-6160L, 2009 WL 1439216, at *1 (W.D.N.Y. May 15, 2009) ("[B]ecause district courts have no jurisdiction to review final orders of removal, they have no jurisdiction to review requests for stays of removal."). Rather, the Court enjoined Petitioner's transfer out of the country to provide it an opportunity to assess "whether an evidentiary hearing [was] warranted." ECF No. 4. Such order is authorized by, among other things, the habeas corpus statute. *See* 28 U.S.C. § 2243.

*Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) ("After entry of a final removal order and during the 90–day removal period, . . . aliens must be held in custody."). Once the removal period terminates, detention becomes discretionary: certain noncitizens "may be detained beyond the removal period." *Id.* § 1231(a)(6). If the government decides not to continue detention, the noncitizen must be released "subject to the terms of supervision in [§ 1231(a)(3)]." *Id.* § 1231(a)(6); *see id.* § 1231 (a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

The relevant regulations regarding the operation of § 1231(a)(6) are contained in 8 C.F.R. § 241.4, which is titled, "Continued detention of inadmissible, criminal, and other aliens beyond the removal period." The regulations identify the government officials who may authorize the continued detention of noncitizens, the noncitizens who may be subject to continued detention, and the relevant factors for assessing whether to continue detention or to authorize release on conditions. § 241.4(a)-(f), (j). When an individual is released pursuant to § 241.4, he or she "shall be released pursuant to an order of supervision[,]" which "shall specify conditions of supervision . . . ." *Id.* § 241.5.

Importantly, not only does 8 C.F.R. § 241.4 address the criteria governing continued detention or release, but it also prescribes the procedures by which the government may revoke a noncitizen's release. *See id.* § 241.4(l)(1)-(3). Subsection 241.4(l)(1), titled "Violations of conditions of release[,]" sets forth the procedures for

revoking the release of persons who have been "released under an order of supervision or other conditions of release" and who have violated those conditions: "Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."

Subsection 241.4 (l)(2), titled "Determination by the Service[,]" authorizes revocation of release "in the exercise of discretion when, in the opinion of the revoking official: (i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate."

Subsection 241.4 (l)(3), titled "Timing of review when release is revoked[.]" mandates a "review process" for noncitizens who are "not released from custody following the informal interview provided for in [§ 241.4(l)(1)]." The "normal review process" commences "with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked. That custody review will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release . . . ."

## II. Analysis

Respondents argue that while Petitioner is properly detained pursuant to

§ 1231, she is not subject to the statute's implementing regulations — specifically the procedural safeguards of notice and an opportunity to be heard upon revocation of release as codified in 8 C.F.R. § 241.4(l) — because she was never detained after her removal order became final and was never issued an order of supervision. Respondents further contend that even if § 241.4(l) did apply, Petitioner received "the substance of th[e] regulation's requirements . . . ." ECF No. 34-3 at 11. The Court rejects each of these contentions below.

**A. Applicability of 8 C.F.R. § 241.4**

As discussed above, the INA distinguishes between noncitizens who have a final order of removal and those who are in removal proceedings. With respect to noncitizens subject to final orders of removal, such as Petitioner, detention is statutorily required during the removal period. If removal has not occurred during the removal period, the government must either continue detention or release the noncitizen pursuant to an order of supervision, which could then only be revoked if the government provides notice and an opportunity to be heard under 8 C.F.R. § 241.4(l).

In Respondents' view, Petitioner does not fall within the scope of § 241.4, which governs "*[c]ontinued detention* of inadmissible . . . aliens beyond the removal period" because she was never detained during the removal period and released on an order of supervision. The Court rejects this argument. Had the government detained Petitioner for the duration of the removal period, as they were required to do by statute, Petitioner could have only been released pursuant to an order of supervision,

*see* 8 C.F.R. § 241.5(a), which would have unquestionably placed Petitioner within the scope of § 241.4 and its procedural protections.

Indeed, § 241.4(l) broadly identifies the noncitizens within its scope as any individual "who has been released under an order of supervision *or other conditions of release.*" Although Petitioner was not released pursuant to an order of supervision, she was released pursuant to "other conditions of release" in the form of an alternatives-to-detention program. Petitioner was thus placed within the ambit of § 241.4(l)'s protections by virtue of her release on conditions under § 1231. Petitioner is entitled to — and the government was required to comply with — the procedural protections of § 241.4(l) in order to lawfully revoke Petitioner's release.

Even if Petitioner did not fall within the scope of § 241.4, she would be entitled to the process set forth in § 241.4(l). The process prescribed therein is minimal — "noti[ce] of the reasons for revocation of his or her release" and an "opportunity to respond to the reasons for revocation" after his or her return to custody. Without deciding the express contours of the process Petitioner was entitled to under the Due Process Clause, the Court does find that § 241.4(l) establishes the *minimum* process that would be due to Petitioner under the Constitution even if Petitioner somehow fell outside of the regulatory protections. *See Ceesay*, 781 F. Supp. 3d at 165 ("[I]f ICE regulations and the enabling statutes did not afford a noncitizen the right to at least some sort of process promptly after being detained, that statutory and regulatory scheme would be unconstitutional. When someone's most basic right of freedom is taken away, that person is entitled to at least some minimal process . . .").

**B. Violation of § 241.4(l)**

After reviewing the record before it, it is evident that Petitioner did not receive the requisite notice and opportunity to be heard under § 241.4(l).[3] Accordingly, the government violated Petitioner's rights when it revoked her release and, on these facts, the Court finds that Petitioner must be released.

**i. Notice**

Section 241.4(l) provides that "[u]pon revocation," the person released on conditions thereunder "will be notified of the reasons for revocation of his or her release or parole." At the evidentiary hearing, the parties agreed that notice under § 241.4(l) typically takes the form of the written notice entered into evidence as Exhibit 1. Counsel for Respondents conceded that Petitioner did not receive that notice but nevertheless argued that Petitioner was afforded adequate notice when she received an order of release on recognizance in 2014 ("ROR"), stating that she "must surrender for removal from the United States if so ordered." ECF No. 34-3 at 11. While this language may provide notice that Petitioner must "surrender for

---

[3] The Court interprets § 241.4(l)(1) to create a unified set of procedures by which noncitizens are entitled to notice and an opportunity to be heard, whether their release is revoked due to noncompliance with their conditions or at the discretion of the authorized revoking official under § 241.4(l)(2). *See Ceesay*, 781 F. Supp. 3d at 163 (collecting cases for the proposition that the courts have interpreted § 241.4(l) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation). This reading is supported by § 241.4(l)(3) which refers to the informal interview provided for in paragraph (l)(1) in the context of a noncitizen's revocation of release. The language in paragraph (l)(3) specifically refers to a decision by an authorized revoking official to revoke a noncitizen's release as being subject to the procedures provided in this section. Indeed, paragraph (l) sets forth even more procedural protections in the form of a notification of a records review, the scheduling of an additional interview to occur within three months of the revocation of release, and a custody review including a final evaluation of contested facts. In any event, as discussed above, the process set forth in § 241.4(l) is the minimum process that would be due to Petitioner under the Constitution even if the regulations did not apply to her.

12

removal . . . if so ordered," the ROR says nothing about why the government revoked Petitioner's release, as is required by the plain language of the regulation. Nor could the ROR provide such notice, as it was issued years before her order of removal became final and over a decade before her re-detention in April 2026. Indeed, nothing in the record demonstrates that the government conveyed to Petitioner its reasons for revoking her release.

### ii. Opportunity to be heard

In addition to notice of the reasons for revocation, § 241.4(l) requires that such person "be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." Respondents contend that Petitioner was afforded this interview, citing the sworn statement that ICE took from Petitioner on the date of her arrest. ECF No. 34-3 at 11. During that interview, Petitioner made statements concerning her identity, her country of citizenship, her immigration status, her lack of a criminal record, and her family history. See ECF No. 34-2 at 49–53. At no point during the interview did the government advise Petitioner of its reason(s) for revoking her release or provide her with an opportunity to respond to the reasons for revocation. Thus, the particular interview cited by the government does not satisfy the requirements of an "initial informal interview" as contemplated under the regulation. Also absent from the record is evidence in the form of Plaintiff's Exhibit 2 that ICE conducted the requisite initial informal interview.

13

### iii. Remedy

It is clear that "the substance of th[e] regulation's requirements" were not fulfilled, contrary to Respondents' arguments, because Petitioner received neither notice of the reasons for the revocation of her release nor an opportunity to respond to those reasons. While the Court understands that not every violation of an agency's regulations warrants relief, *see Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993), the government's noncompliance here demands relief because it implicates the fundamental rights of notice and an opportunity to be heard. *See, e.g., Ceesay*, 781 F. Supp. 3d at 165 n. 26 ("There can be little argument that ICE's requirement that noncitizens be afforded an informal interview . . . derives from the fundamental constitutional guarantee of due process."). Specifically, under the circumstances of this case, the appropriate remedy is release from custody. *See Zhang v. Bondi*, No. 25-CV-10418 (JPO), 2026 WL 42778, at *5 (S.D.N.Y. Jan. 7, 2026) ("This Court joins the other courts in this circuit that have ordered a petitioner's immediate release from detention after finding that ICE violated procedures under § 241.4(*l*) in revoking the petitioner's [order of supervision], by failing to provide a legally sufficient notice of revocation, an informal interview, or both."); *Ceesay*, 781 F. Supp. 3d at 166 ("[B]ecause ICE did not follow its own regulations in deciding to re-detain [the petitioner], his due process rights were violated, and he is entitled to release."); *Rombot v. Souza*, 296 F. Supp. 3d 383, 387–88 (D. Mass. 2017) (finding release an appropriate remedy where ICE failed to follow its own regulations by, among other things, detaining the petitioner without affording him the informal interview

14

required by regulation).

## CONCLUSION

As Respondents emphasized, even if Petitioner is ordered released, "Petitioner will remain subject to [a] final order of removal and will be removed accordingly." ECF No. 34-3 at 11–12. To be clear, the Court's decision is not enjoining the government from lawfully executing the removal order against Petitioner. The Court is simply saying that the government may only execute the removal order in accordance with the law.

## ORDER

IT IS HEREBY ORDERED Respondents' motion to dismiss [ECF No. 34] is DENIED; and Petitioner's application for habeas relief [ECF No. 23] is GRANTED to the extent that Petitioner shall be released from immigration custody; and it is further

ORDERED that Petitioner shall be released from custody pursuant to an order of supervision, *see* 8 C.F.R. § 241.5(a); and it is further

ORDERED that if the government decides to execute the removal order against Petitioner in the future, Petitioner shall receive written notice of the reasons for the revocation of release in a manner that complies with 8 C.F.R. § 241.4(l), that is issued by an individual with proper authority, and that is substantially similar to the notice that was submitted as Petitioner's Exhibit 1 at the May 26, 2026 hearing; and it is further

ORDERED that upon any such revocation of release, Petitioner shall receive

15

an initial informal interview in compliance with 8 C.F.R. § 241.4(l) promptly after her return to custody to afford her an opportunity to respond to the reasons for revocation stated in the notification.

To the extent the Court's text order issued on May 27, 2026, contains additional requirements not stated herein, the Court hereby modifies the text order to conform to this decision and order. The Court declines to address whether Petitioner is entitled to any additional process beyond that which is contained in 8 C.F.R. § 241.4(l), including whether Petitioner is entitled to an "orderly departure."

The Clerk of Court is directed to enter judgment in favor of Petitioner and close this case.

SO ORDERED.

DATED:     July _10_, 2026
           Rochester, New York


HON. MEREDITH A. VACCA
United States District Judge

16